IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Donovon Crawford (28354-057), ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. 21 C 50312 |
| v. ) | |
| ) | Hon. Iain D. Johnston |
| Thomas Bergami, Warden, ) | |
| USP Thomson, ) | |
| ) | |
| Respondent. ) | |

## **MEMORNADUM OPINION AND ORDER**

Donovon Crawford, a federal prisoner incarcerated at USP Thomson, petitions for a writ of habeas corpus, 28 U.S.C. § 2241, contending his rights were violated in two prison disciplinary proceedings where he lost good-time credit. He seeks expungement of the disciplinary tickets and restoration of 54 days of good-time credit. (Dkt. 1.[1]) The Warden of USP Thomson, Andrew Ciolli,[2] argues that Crawford did not exhaust his available administrative remedies, and that, even supposing he did, both disciplinary proceedings complied with due process requirements. (Dkt. 21.) For the reasons below, the Court denies in part and dismisses without prejudice in part Crawford's § 2241 petition [1].

## I. BACKGROUND

Crawford is serving a 262-month sentence for possession with intent to distribute cocaine base, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm by a felon. *U.S. v. Crawford*, 552 F. App'x 240, 243–44 (4th Cir. 2014); (Dkt. 21 at p. 1.) He

---

[1] Crawford submitted a reply (Dkt. 25) more than a year after the deadline to file one expired. The Court does not endorse (extremely) late filings. Even if it did, Crawford's reply only summarizes the points he already made. And so, even considering his reply, it does not change the Court's analysis.

[2] The current Warden of USP Thomson is Thomas Bergami. The Court substitutes Warden Bergami as the named Respondent in this habeas action. Fed. R. Civ. P. 25(d).

challenges two prison disciplinary punishments from two separate prisons, which resulted in him losing, among other things, 54 days of good-time credit.

In 2019, prison officers witnessed Crawford fighting with another inmate at FCC Coleman in Florida. (Dkt. 21 at p. 73.) The reporting officer stated that he witnessed the two inmates exchange closed fist punches at each other's head and reported that they did not comply with orders to cease fighting. (*Id*.) Crawford was cited in an incident report for one rule violation—fighting with another person (Code 201). (*Id.* at p. 74); *see* 28 C.F.R. § 541.3, Table 1.

On July 10, 2019, the Unit Disciplinary Committee (UDC) convened and transferred the incident to the Disciplinary Hearing Officer (DHO) because of the severity of the charge. (Dkt. 21 at p. 73.) Crawford, however, did not appear at the UDC, though records indicate he was given the opportunity to do so. (*Id.* at p. 77.) That same day, while Crawford was provided with written notice of both the disciplinary hearing before a DHO and his rights, he did not elect to have a staff representative, did not request the introduction of any witness testimony, and did not sign the notice confirming its receipt. (*Id.* at pp. 75–76.)

At the July 23, 2019 disciplinary hearing, the DHO reported that Crawford understood his rights, had no documentary evidence to present, did not request any witnesses, declined the services of a staff representative, and was ready to proceed. (*Id.* at p. 96.) Crawford denied the charge and stated he "was never UDC'd." (*Id*.) The DHO considered Crawford's denial and noted that the UDC signature certified that the UDC did convene. (*Id*.) After weighing Crawford's denial against the incident report, two officers' witness accounts, video footage, and medical records of both Crawford and the other inmate, the DHO ruled that Crawford committed the prohibited act of fighting. (*Id*.) Crawford was sanctioned with the loss of 27 days of good-time credit, 10 days disciplinary segregation, and the loss of 90 days of visiting and commissary privileges. (*Id.* at pp.

96–97.)

Attempting to comply with the Bureau of Prisons (BOP) administrative grievance process, Crawford claims to have twice appealed the DHO ruling to the Regional Office. (Dkt. 1-3 at p. 4.) For both appeals, in August and October 2019 respectively, Crawford did not receive a response. (*Id*.) Two months later, Crawford appealed to the General Counsel (*id*.), but in January 2020, it was rejected for lack of an appeal on record at the Regional Office (Dkt. 21 at p. 116). Crawford appealed a second time directly to the General Counsel (Dkt. 1-3 at p. 4), but in March 2020, that office again rejected his appeal for not initiating the appellate process at the regional level. (Dkt. 21 at p. 116.) Finally, the record ends with a third appeal to the General Counsel, which was rejected in June 2020 noting that he failed follow the instructions provided to him in the January 2020 rejection notice directing him to file with the Regional Office. (*Id.* at p. 115.)

Later in 2020, after Crawford was transferred to USP Thomson, a prison officer reported finding a 5½ inch metal rod with a sharpened point inside Crawford's shared cell. (Dkt. 21 at p. 120; Dkt. 1-5 at p. 1.) Opposite the pointed end, the metal rod was wrapped in material to act as a handle. (Dkt. 21 at p. 120.) Crawford was cited in an incident report for one rule violation—possessing a dangerous weapon (Code 104). (*Id*.); *see* 28 C.F.R. § 541.3, Table 1.

On January 10, 2021, after the Federal Bureau of Investigation declined the criminal referral, the UDC convened and referred the incident to the DHO because of the severity of the charge, with the UDC recommending the loss of good-time credit. (Dkt. 21 at pp. 103–02, 121.) That same day, Crawford was provided with written notice of both the disciplinary hearing before a DHO and his rights, and he elected to have a staff representative. He did not, however, request the introduction of any witness testimony. (*Id.* at pp. 105–06.) Crawford signed the notice confirming its receipt. (*Id*.)

At the February 18, 2021 disciplinary hearing, the DHO reported that Crawford appeared with a staff representative, even though it was not his preferred staff representative. (*Id.* at p. 98.) Crawford did not ask the staff representative to do anything on his behalf because his preferred representative "had the information." (*Id.*) And he did not call any witnesses. (*Id.* at p. 99.) Crawford denied the charge, claiming that the metal rod "wasn't found in [his] possession." (*Id.* at p. 98.) But Crawford agreed that it "was found on the floor." (*Id.*) The DHO relied on the responding officer's statement, which stated in part, that he located the metal rod "on the floor inside the cell next to the door, wrapped in tissue paper." (*Id.* at p. 99.) The DHO ruled that Crawford committed the offense of possessing a weapon. (*Id.*) Crawford was sanctioned, again with the loss of 27 days of good-time credit, as well as the loss of 60 days of commissary and phone privileges. (*Id.* at p. 100.)

To appeal the sanction, Crawford requested the DHO report but was denied. (Dkt. 1-2 at p. 4.) About two months after the disciplinary hearing, the report was completed, but apparently not delivered to Crawford. (Dkt. 21 at p. 100.) Another four months later, without having received the report, Crawford filed this § 2241 petition on or around August 3, 2021. (Dk.t 1-2 at p. 4; Dkt. 1-6 at p. 1.) Over three weeks after mailing his petition, Crawford received the report on or around August 27, 2021. (Dkt. 21 at p. 100.) At some point (exactly when is unclear), Crawford filed an appeal to the General Counsel, but it was rejected on September 8, 2021, because he did not include a copy of the report. (Dkt. 21 at p. 117.) The record does not reveal if Crawford took any further action within the BOP.

## II. ANALYSIS

Crawford has a constitutionally protected liberty interest in earned good-time credit, so he must receive due process before a DHO revokes such credit. *Twitty v. Lockett*, 556 F. App'x 507,

4

508 (7th Cir. 2014); *Jones v. Cross*, 637 F.3d 841, 845 (7th Cir. 2011). To take that action requires 24 hours' advance notice of the charge, a hearing before an impartial decisionmaker, the right to call witnesses and present evidence, and a written explanation of the outcome that is supported by "some evidence" in the record. *Wolff v. McDonnell*, 418 U.S. 539, 563–71 (1974); *see also Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985).

But for this Court to review Crawford's disciplinary punishment due process claims, he must first exhaust available administrative remedies. *United States v. Walker*, 917 F.3d 989, 994 (7th Cir. 2019); *Richmond v. Scibana*, 387 F.3d 602, 604 (7th Cir. 2004). And satisfying this precondition to federal habeas relief requires "proper exhaustion"—that is, complying with BOP rules. *Ihmoud v. Jett*, 272 F. App'x 525, 527 (7th Cir. 2008), citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) ("proper exhaustion . . . 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)'"), quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002).

The BOP has implemented an Administrative Remedy Program that permits "an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10. Exhaustion of a DHO's disciplinary punishment requires appealing first to the Regional Office, and then to the Office of the General Counsel in Washington, D.C. *See* §§ 542.10-15.

1. The 2019 Fighting Incident

    A. Exhaustion

Crawford contends that exhaustion was unavailable and should be excused because the Administrative Remedy Program operated as a dead-end in his case. (Dkt. 1-3 at p. 11.) According to Crawford, he initially filed two appeals at the regional level following the issuance of the DHO report. (*Id.* at p. 4.) For both appeals, he received no response from the Regional Office. (*Id.*)

Crawford includes two different United States Postal Service tracking numbers for his second appeal, but both numbers appear invalid.³ (*Id*.) Considering the non-responses as a denial at the regional level, he filed an appeal with the General Counsel—not once but three times. (*Id*.); *see* 28 C.F.R. § 542.18. Crawford claims to have informed the General Counsel about the lack of response by the Regional Office. (*Id*.) On each occasion, though, the General Counsel explained to him that there was no record of Crawford having filed an appeal with the Regional Office. (Dkt. 21 at pp. 115–16.) As Crawford puts it, the General Counsel was "urging" him to initiate his appeal with the Regional Office before potentially returning to the final level of administrative appeals. (Dkt. 1-3 at p. 4.)

Whether the BOP's exhaustion process was unavailable to Crawford, or whether he failed to properly use it cannot be determined on the current record. Crawford claims to have lodged appeals at the regional level, and afterwards, explaining the Regional Office's non-responsiveness in his General Counsel appeals. Maybe the non-responsiveness was due to a mistake Crawford made when submitting those appeals. Or perhaps the Regional Office mishandled the appeals. Considering the time needed to untangle this dispute, and additional information that might or might not exist, it is judicially more efficient to proceed to the merits of Crawford's claim. *Brown v. Watters*, 599 F.3d 602, 609–10 (7th Cir. 2010) (explaining that the exhaustion requirement does not mean "'that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be'"), quoting *Lambrix v. Singletary*, 520 U.S. 518, 524 (1997); *see also Berry v. Knight*, 2019 WL 3556884, at *2 (S.D. Ind. 2019) ( "Mr. Berry argues in his reply that he wrote to the Final Reviewing Authority but never received a response. . . . Rather than resolve this action on

---

³ Using the tracking service available on the United States Postal Service website returns the following message for both tracking numbers Crawford provided: "The tracking number may be incorrect or the status update is not yet available. Please verify your tracking number and try again later."

procedural default, the Court will proceed to address the claims on the merits.").

### B. Crawford's Grounds for Relief

Crawford asserts that the disciplinary proceedings for his 2019 fighting charge violated his due process rights in three ways: 1) he was not afforded a staff representative to prepare for the disciplinary hearing; 2) the DHO relied on insufficient evidence; and 3) the DHO was biased by acting as both an investigator and an adjudicator when he viewed video footage of the altercation. (Dkt. 1-3 at p. 5.) The Warden contends Crawford's claims are meritless because he had no right to a staff representative and there was some evidence, i.e., sufficient record evidence, to support the disciplinary punishment without the video footage. (Dkt. 21 at pp. 5–7.) The Court addresses each ground for relief in turn.

#### a. Lack of a Staff Representative

Crawford claims that he is entitled to and was denied a staff representative to prepare for his disciplinary hearing. (Dkt. 1-3 at pp. 5–8.) This claim for relief fails. Although *Wolff* did not decide whether a right to representation is among the due process rights applicable to prison disciplinary hearings, the Court conveyed that such a right may exist "[w]here an illiterate inmate is involved . . . or . . . the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." *Wolff*, 418 U.S. at 570; *see also Martin v. Zatecky*, 749 F. App'x 463, 466 (7th Cir. 2019); *Miller v. Duckworth*, 963 F.2d 1002, 1004 (7th Cir. 1992).

Crawford does not argue that he meets either exception for a potential lay advocate. To the contrary, his filings demonstrate he is not illiterate, his disciplinary case was not overly complex, and, in fact, he was able to competently represent himself as he persuaded the DHO to review video footage of the incident. (Dkt. 1-3, pp. 5–8.) Crawford, instead, simply states that BOP

policies provide for representation, *see* 28 C.F.R. § 541.8(d). (*Id.* at p. 7.) And, he explains, a representative would have been better able to show that Crawford was not fighting but was defending himself from an assault. (*Id.* at pp. 6–8.) Yet a "violation of an administrative rule is not the same thing as the violation of the Constitution." *Kramer v. Jenkins*, 806 F.2d 140, 142 (7th Cir. 1986), citing *Olim v. Wakinekona*, 461 U.S. 238, 248–50 (1983). Like the prisoner in *Wolff*, Crawford is not "within the class of inmates entitled to advice or help from others in the course of a prison disciplinary hearing." *Wolff*, 418 U.S. at 570.

    b.  **Insufficient Evidence**

In Crawford's view, the DHO relied on insufficient evidence to find that he committed the charged offense. For prison disciplinary decisions, though, due process does not require a high evidentiary standard. Along with certain procedural protections, disciplinary punishment must be supported by "some evidence." *Hill*, 472 U.S. at 454. That standard is a "meager threshold." *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007). Indeed, any evidence in the record that supports the DHO's decision will satisfy it. *Chambers v. Ciolli*, 19 F.4th 984, 986 (7th Cir. 2021) ("[T]he district court was right that the incident reports sufficed to clear that low bar."). Here, the DHO had the incident report which details the fight between Crawford and another inmate, two officers' eyewitness accounts, video footage of the incident, and medical records of the inmates. (Dkt. 21 at p. 96.) Although the record before this Court does not contain the video footage, it does include the incident report (*Id.* at pp. 73–74), the officers' eyewitness accounts (*Id.* at pp. 79–80), and the inmates' medical records (*Id.* at pp. 91–88). Both the incident report and each officer's eyewitness account state that Crawford and another inmate exchanged closed fist punches to each other's head. (Id. at pp. 73–74, 79–80.) Any one of these provides some evidence to support Crawford's discipline consistent with due process standards. *Chambers*, 19 F.4th at 986.

8

Crawford also asks the Court to reweigh the evidence, hoping it will proclaim his innocence. Reweighing evidence, though, "is not the stuff of § 2241 review." *Cervantes De Hernandez v. Chertoff*, 368 F.Supp.2d 896, 906 (E.D. Wis. 2005). On a petition for habeas relief, a federal court looks only for some record evidence to support a non-arbitrary decision. *Hill*, 472 U.S. at 455 (explaining the meager evidentiary threshold shields a "disciplinary board's factual findings or decisions with respect to appropriate punishment" from "second-guessing upon review"); *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) ("It is not our province to assess the comparative weight of the evidence underlying the disciplinary board's decision."). Crawford fails to show that his disciplinary punishment was not supported by the required minimal evidence, and this claim is without merit.

    **c. Adjudicator Bias**

Crawford contends that the DHO became a biased decision-maker when he reviewed the video footage of the fight. (Dkt.1-3 at pp. 8–10.) DHOs "are entitled to a presumption of honesty and integrity, and thus the constitutional standard for impermissible bias is high." *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003) (cleaned up). Impermissible bias occurs when DHOs "are directly or substantially involved in the factual events underlying the disciplinary charges, or the investigation thereof, from serving on the board hearing the charge." *Id.* at 667. On this point, Crawford does not allege that the DHO integrally participated in the underlying facts of the charged offense, investigation, or preparation of the charging document.

Instead, at Crawford's request, the DHO reviewed the video footage during the hearing. (Dkt. 1-3 at p. 9.) Once the DHO had done so, Crawford argues, the hearing officer switched roles from adjudicator to investigator. But this argument falls flat on its face. After all, the disciplinary hearing is the time to introduce contradictory positions with some evidence, or testimony, or both.

9

And the weighing of these positions, however divergent, is the sole function of the DHO. *Cf. Webb*, 224 F.3d at 652. The fact that some evidence is in the form of video footage does not reduce the hearing officer's impartiality by somehow making him a witness or an investigator. Crawford may believe that the video footage supports his defense, but the fact that the DHO had some evidence to weigh against Crawford's position is a signal, sharp and clear that the disciplinary punishment was based on *some evidence*. *Hill*, 472 U.S. at 457 ("The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board.").

None of Crawford's challenges to his 2019 disciplinary proceedings establish due process violations, so none of them warrant federal habeas relief.

## 2. The 2020 Dangerous Weapon Incident

As for Crawford's 2020 disciplinary charge for possessing a dangerous weapon, the Warden again contends that Crawford failed to exhaust administrative remedies and that his due process claims are without merit. The record for this claim, unlike the prior one, is sufficient for this Court to rule on the exhaustion issue, and so the Court does not get to the merits because Crawford did not fully exhaust available administrative remedies before seeking federal habeas relief.

The Warden argues that Crawford's failure to exhaust should not be excused because he neither initiated an appeal once he received the DHO report nor resubmitted a corrected appeal that included a copy of the DHO report. (Dkt. 21 at pp. 11–12.) Crawford refutes the Warden's view, contending that exhaustion was unavailable or should be excused because, when he mailed his § 2241 petition on or around August 3, 2021, he and had yet received the DHO report. (Dkt. 1-2 at p. 10.) Taking at least six months from the date of his hearing, Crawford explains, caused his administrative remedies to be unavailable. (*Id*.); *see Gonzalez v. O'Connell*, 355 F.3d 1010, 1016

10

(7th Cir. 2004) (listing four circumstances when failing to exhaust may be excused, e.g., unreasonable delay). And so without the DHO report, he argues that he was unable to properly exhaust administrative remedies before challenging his disciplinary punishment in federal court.

Crawford alleges that he "constantly requested" a copy of the DHO report. (Dkt. 1-2 at p. 4.) In denying his request, he was told by BOP officers that "they were backed up with paperwork so the reports would take longer to receive." (*Id.* at pp. 4–5.) Crawford does not allege that he made further attempts to exhaust administrative remedies; for instance, initiating an appeal with the Regional Office that included the disciplinary charge, incident report number, date of the incident, date of the disciplinary hearing, and an explanation that he was not given the DHO report. *See Hawkins v. Sproul*, 2020 WL 1905170, at *3–5 (S.D. Ill. 2020) (concluding inmate exhausted administrative remedies when, without having received the DHO report, he appealed to all levels by including the disciplinary charge, incident report number, date of the incident, date of the disciplinary hearing, and an explanation that he was not given the DHO report).

But, as the Warden points out, presumably after Crawford petitioned for habeas relief, but before he received the DHO report, he initiated an administrative appeal. (Dkt. 21 at pp. 11, 117, 126.) That appeal was denied for lack of including the DHO report. (*Id.*) There is nothing in the record that shows Crawford appealed the denial order. And there is no support in the record that Crawford attempted to properly exhaust administrative remedies once he received the DHO report at the end of August 2021.

Although it is true that Crawford is constitutionally entitled to a written explanation of the outcome, *Wolff* does not stipulate a timeframe to issue that decision. *E.g.*, *White v. Indiana Parole Bd.*, 266 F.3d 759, 768 (7th Cir. 2001) ("*Baxter v. Palmigiano*, 425 U.S. 308 . . . (1976), warns the courts of appeals not to add to the procedures required by *Wolff*, which, *Baxter* held, represents a

11

balance of interests that should not be further adjusted in favor of prisoners."). The BOP suggests, as a guideline, that the DHO issue its report within 15 workdays of the decision. (Dkt. 21 at p. 51, Program Statement.) And in Crawford's case, the report was not issued until some four months after the DHO had completed it. The 15-day guideline, however, is nothing more than a suggestion; it contains no mandatory language much like the regulation it is based on, *see* 28 C.F.R. § 541.8. Even if mandatory language were included, neither the Program Statement nor the regulations create "a liberty interest protected by the Due Process Clause." *Thomas v. Ramos*, 130 F.3d 754, 760 (7th Cir. 1997); citing *Sandin v. Connor*, 515 U.S. 472, 481–83 (1995).

To excuse full exhaustion, Crawford must show cause for his failure and prejudice. *Sanchez v. Miller*, 792 F.2d 694, 697 (7th Cir. 1986). Cause generally means some "objective factor, external to petitioner, which impeded his ability to exhaust." *Moon v. Walton*, 2014 WL 788895, at *2 (S.D. Ill. 2014), citing *Moore v. Casnerson*, 345 F.3d 474, 486 (7th Cir. 2003). Like Crawford, the inmate in *Moon v. Walton* filed his petition before receiving his DHO report, which took five months to issue. *Moon*, 2014 WL 788895, at *1 (holding inmate who, before the DHO issued its report, filed appeals with the Regional Office and General Counsel failed to exhaust administrative remedies). The court explained that the "fact that it took five months for the DHO to issue his report cannot serve as cause." *Id.* at *2. This is so because administrative remedies had yet to begin. *Id.* ("Under the established procedures, Moon simply had to wait until he received the report and then challenge it at the level of the Regional Director."). And so, Crawford prematurely filed in federal court because, as presented, "there was no reason why he could not wait." *Id.*; *see Sanchez v. Miller*, 792 F.2d 694, 699 (7th Cir. 1986) (allowing prisoners to "circumvent the administrative process" and file habeas petitions before they exhaust "diminishes the effectiveness of the agency").

12

Besides delay, Crawford offers no other reason as to how he was prejudiced in not receiving the DHO report sooner, "so any conceivable due process violation was harmless." *Jones*, 637 F.3d at 846, citing *Piggie*, 344 F.3d at 678 (reviewing due process violations for harmless error); *see Reed v. Bell*, 799 F. App'x 930, 933 (7th Cir. 2020) (non-precedential order) ("He does not, however, explain—as he must to justify reversal—how he was prejudiced.").

As for Crawford's 2020 dangerous weapon charge, the record shows that he did not exhaust administrative remedies before filing his § 2241 petition. Both parties acknowledge, however, that Crawford received the DHO's report after he filed his petition, and that administrative remedies became available at that time. If Crawford exhausted administrative remedies after receiving the DHO report, or if he contends that such remedies were unavailable even after he received the report, he may now file a new § 2241 petition challenging his 2020 disciplinary punishment to obtain judicial review. But for the reasons explained above, administrative remedies were available to him at the time he filed this case, and he did not exhaust them. This claim is dismissed without prejudice to him filing another § 2241 petition.

### III. NOTICE OF APPEAL RIGHTS

Crawford is advised that this is a final decision ending his case in this Court. If he wishes to appeal, he must file a notice of appeal with this Court within sixty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1)(B)(iii). Crawford need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if he wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon.

*See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

## IV. CONCLUSION

As for Crawford's 2019 fighting charge, the Court denies his petition with prejudice because he was not denied due process. Crawford, however, did not exhaust administrative remedies of his 2020 dangerous weapon charge, but did have the opportunity to exhaust after he filed this case. This claim is thus dismissed without prejudice. The Clerk is directed to substitute Thomas Bergami, the Warden of USP Thomson, as the named Respondent and enter a Rule 58 Judgment for the Warden. Civil case terminated.

Date: February 23, 2023     By: _____
                                Iain D. Johnston
                                United States District Judge